FILED
2026 Sep-17 AM 10:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | |
|---|---|
| **TOBY W. PURVIS,**<br>Plaintiff,<br><br>**v.**<br><br>**FRANK BISIGNANO, Commissioner of the Social Security Administration,**<br>Defendant. | **Case No. 4:25-cv-1160-CLM** |

**MEMORANDUM OPINION**

Toby Purvis seeks disability and disability insurance benefits ("DIB") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Purvis's application in an opinion written by an Administrative Law Judge ("ALJ").

Purvis argues: (1) that the ALJ failed to properly evaluate all medical opinions in the record; (2) that the ALJ failed to properly apply SSR 18-3p; (3) that the ALJ's decision is not supported by substantial evidence; and (4) that the Appeals Council erred in denying Purvis's request for review. The court agrees with Purvis that the ALJ erred in not addressing the persuasiveness of a February 2020 medical opinion from Dr. James Robinson. So the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner.

## I. Statement of the Case

This is the third time that the SSA has denied Purvis's application for benefits. And the unfavorable hearing decisions from both July 2022 and August 2024 are relevant to Purvis's appeal. Before addressing these decisions, the court will discuss Purvis's impairments as he explained them at his July 2024 ALJ hearing.

### A. Purvis's disability, as told during the ALJ hearing

Purvis was 35 years old at the time of the ALJ's hearing decision. (R. 47, 283). Purvis completed two years of college and recently worked part-time at Lowe's pushing carts. (R. 341, 61).

In his disability report, Purvis alleged that he cannot work because he suffers from type 1 diabetes, diabetic neuropathy, hypertension, cubital tunnel syndrome, heart disease, celiac disease, anxiety, and vision issues due to diabetes. (R. 340). At the ALJ hearing, Purvis said that he could not work a full shift at Lowe's because of his uncontrolled blood sugar and vision issues. (R. 62). Purvis also testified that he had run out of his medication, including insulin, gabapentin, and Cymbalta. (R. 66–67).

According to Purvis, when his blood sugar gets too low, his heart feels like it is beating out of his chest, and he can't walk or move. (R. 72). Purvis also says that he has issues with wounds that don't heal, needs to sleep around 3 to 4 hours during the daytime, must constantly go to the bathroom, and gets frequent headaches. (R. 74–75). And though Purvis had surgery on his left elbow, he says that his fingers still lock up and his hand goes numb. (R. 67).

Purvis lives with his wife and her children, and Purvis's twins stay with them on the weekends. (R. 69–70). Purvis usually goes with his wife to work because he is scared to be home alone with his blood sugar issues. (R. 71). While at his wife's work, which is at a furniture store in Gadsden, Purvis sits on the furniture and watches TV. (*Id.*). Although Purvis doesn't dust, mop, or vacuum, he does his own laundry and prepares his own meals. (*Id.*). When Purvis's kids come to visit, they normally watch movies together unless Purvis is asleep. (*Id.*).

### B. The First ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Purvis applied for disability, DIB, and supplemental security income ("SSI") in June 2019, and the SSA first denied these claims in September 2019. After conducting a hearing, the ALJ denied Purvis's application for benefits in July 2022. (R. 173–87). While the ALJ found Purvis's type 1 diabetes, polyneuropathy, and hypertension severe, the ALJ determined that Purvis could work as a cashier, sales attendant, and hotel housekeeper. Thus, the ALJ found that Purvis was not disabled. In making this determination, the ALJ found unpersuasive February 2020 and January 2022 medical opinions from treating physician Dr. James Robinson, deciding that (1) these were not "true medical opinion[s]," (2) Dr. Robinson was commenting on issues "reserved to the Commissioner," and (3) Dr. Robinson's opinions were not consistent with the medical evidence of record or supported by his own treatment notes. (R. 184).

Purvis did not appeal the ALJ's denial of his 2019 application for benefits to the SSA Appeals Council but did ask the second ALJ to reopen his application for benefits based on Dr. Robinson's 2022 opinion. (R. 31). The second ALJ denied the request to reopen. (*Id.*). Thus, Purvis's September 2022 application for benefits is the only application at issue.

### C. Determining Disability

Before detailing Purvis's September 2022 application for benefits, the court lays out the SSA's five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied.<br>If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied.<br>If yes, proceed to Step 3. |

| | | |
|---|---|---|
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| **Determine Residual Functional Capacity** | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### D. Purvis's Application and the ALJ's Decision

Purvis applied for DIB and a period of disability in September 2022. After receiving an initial denial in July 2023, Purvis requested an ALJ hearing, which was held in July 2024. The ALJ ultimately issued an opinion denying Purvis's claims in August 2024. (R. 31–47).

At Step 1, the ALJ determined that while Purvis worked at Lowe's and Variety Stores, Inc., after his disability onset date, this work did not amount to substantial gainful activity. Thus, Purvis's claims would proceed to Step 2.

At Step 2, the ALJ determined Purvis suffered from the following severe impairments: Type I diabetes mellitus with neuropathy; diabetic retinopathy; s/p left cubital tunnel release; depression; and anxiety.

At Step 3, the ALJ found that none of Purvis's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Purvis's residual functional capacity.

The ALJ determined that Purvis had the residual functional capacity to perform a range of light work with these added limitations:

- Purvis can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.
- Purvis should never climb ladders, ropes, or scaffolds.
- Purvis can only occasionally be exposed to extreme heat and humidity.
- Purvis cannot be exposed to hazards such as unprotected heights and hazardous machinery.
- Purvis can frequently handle and finger with his bilateral upper extremities.
- Purvis should not perform jobs that require fine visual discrimination, i.e., jobs that involve working with very small objects like beads or small screws.
- Purvis can recognize workplace hazards such as boxes on the floor, doors ajar and approaching vehicles.
- Purvis would be able to understand, remember, and carry out simple instructions.

- Purvis can tolerate changes in the workplace that are infrequent and gradually introduced.

- Purvis can have occasional work-related interaction with supervisors, co-workers, and the general public.

At Step 4, the ALJ found that Purvis had no relevant work experience.

At Step 5, the ALJ determined that Purvis could perform jobs, such as marker; cleaner, housekeeping; and routing clerk, that exist in significant numbers in the national economy and thus Purvis was not disabled under the Social Security Act.

Purvis requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. LEGAL ANALYSIS

Purvis makes four arguments for why the ALJ erred. First, Purvis says that the ALJ did not adequately evaluate the medical opinions in the record. Second, Purvis asserts that the ALJ failed to apply SSR 18-3p. Third, Purvis argues that substantial evidence does not support the ALJ's decision. Finally, Purvis contends that the Appeals Council erred in denying Purvis's request for review without exhibiting evidence that Purvis says was new, chronologically relevant, and material.

The court agrees that the ALJ erred in not discussing the persuasiveness of Dr. Robinson's February 2020 medical opinions. So the court needn't address Purvis's other arguments for reversal.

Under the regulations that apply to Purvis's disability determination, an ALJ must articulate how persuasive she finds "***all*** of the medical opinions and all of the prior administrative findings" in a claimant's case record. *See* 20 C.F.R. § 404.1520c(b) (emphasis added). ALJs focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency and must explain how the ALJ considered those two factors. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, explain how the ALJ considered other factors, such as the medical source's relationship with the claimant and specialization. *See id.* Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

1. *Background*: Dr. Robinson is Purvis's primary care physician at Southside Medical Clinic. In February 2020, Dr. Robinson provided a clinical assessment of pain and physical capacities evaluation of Purvis. (R. 1268–69).

The clinical assessment of pain found that Purvis's pain was "present to such an extent as to be distracting to adequate performance of daily activities or work." (R. 1268). Dr. Robinson also noted that physical activity, such as walking, standing, sitting, bending, stooping, or moving of extremities, would greatly increase Purvis's pain to such a degree as to cause distraction or total abandonment of tasks. (*Id.*). But Dr. Robinson found that Purvis's medications would only cause some limitations and that those limitations would not likely create serious problems in most instances. (*Id.*).

The physical capacities evaluation found that Purvis could occasionally lift and carry 10 lbs and frequently lift and carry 5 lbs. (R. 1269). And during an 8-hour workday, Purvis could sit for 6 hours a day and stand or walk for 2 hours a day. (*Id.*). Dr. Robinson said that Purvis did not need an assistive device but would likely miss more than four days of work per month as a result of his impairments. (*Id.*). Dr. Robinson also determined that Purvis could never work with or around hazardous machinery but could frequently work in settings with environmental problems. (*Id.*). Dr. Robinson limited Purvis to rarely performing: (1) pushing and pulling movement (arm and/or leg controls); (2) climbing (stairs or ladders) and balancing; (3) bending and/or stooping movements; (4) reaching (including overhead); and (5) operating motor vehicles. (*Id.*). But Purvis could occasionally perform gross manipulation (grasping, twisting, and handling) and fine manipulation (finger dexterity). (*Id.*).

In January 2022, Dr. Robinson filled out another physical capacities form. (R. 1345). This physical capacities form said that Purvis could constantly lift up to 10 lbs, frequently lift up to 50 lbs, and occasionally lift up to 100 lbs. (*Id.*). And Dr. Robinson found that Purvis could constantly reach, handle, finger, and feel with both his left and right hands. (*Id.*). Dr. Robinson also said that he expected Purvis to be off-task 10% of the time during an 8-hour workday, to miss 3–5 days of work during a 30-day period, and to need 4 bathroom breaks in an 8-hour period. (*Id.*).

Dr. Robinson expected these bathroom breaks to take less than 15 minutes each and for Purvis to spend 0 minutes of an 8-hour daytime period lying down, sleeping, or sitting with his legs propped at waist level or above. (*Id.*). According to Dr. Robinson, Purvis's limitations existed back to June 2019 and were caused by Purvis's poorly controlled diabetes and intellectual disabilities. (*Id.*).

The ALJ considered Dr. Robinson's January 2022 assessment and found it only partially persuasive because Dr. Robinson's "assessments regarding off task behavior and breaks and the length of those breaks taken do not have any explanation as to why those particular responses were chosen." (R. 44). Thus, the ALJ found that these responses were a "guesstimate" and noted that these limitations were not specifically addressed by Dr. Robinson's treatment records. (*Id.*). But the ALJ did not explain how persuasive she found Dr. Robinson's February 2020 opinions, and the ALJ's hearing decision includes no mention of the February 2020 physical capacities evaluation or clinical assessment of pain.

2. *ALJ's error*: As explained, ALJs are required to articulate "how persuasive [they] find all of the medical opinions" in the claimant's case record. 20 C.F.R. § 404.1520c(b). But when a medical source provides multiple medical opinions, the ALJ may explain in "a single analysis" how the ALJ considered each of the medical opinions from that medical source. *See id.* The ALJ needn't articulate how she considered "each medical opinion . . . from one medical source individually." *See id.*

Applying this standard, the ALJ was allowed to address Dr. Robinson's opinions collectively and give a single persuasiveness finding for Dr. Robinson's multiple opinions. But the ALJ still needed to show that she considered all the medical opinions from Dr. Robinson in the record. And the court is not convinced the ALJ considered Dr. Robinson's February 2020 opinions in making her residual functional capacity assessment. As Purvis notes, the ALJ's hearing decision includes no mention of these 2020 records. And the ALJ's persuasiveness analysis is directed at only the 2022 physical capacities form because the ALJ

references the 8 workplace limitations questions on that form and specifically cites only the physical capacities form at the end of her analysis. (R. 44). Because the ALJ did not consider all of the medical opinions in the record, she erred.

3. *Error not harmless*: Nor does the court find the ALJ's error harmless. The Commissioner says that the ALJ's error is harmless because the ALJ's analysis related to Dr. Robinson's 2022 opinion can also apply to his 2020 opinion and any discrepancy would not change the outcome of Purvis's claim. The court might agree with the Commissioner if Dr. Robinson's two opinions discussed exactly the same functional limitations. But they do not. While both opinions address Purvis's lifting limitations, gross and fine motor manipulation skills, and likely absenteeism, the 2020 physical capacities evaluation addresses other limitations not discussed in the 2022 physical capacities form. For example, only the 2020 evaluation says that Purvis is limited to rarely performing pushing, pulling, bending, or stooping movements. Thus, the ALJ's persuasiveness finding says nothing about how persuasive the ALJ would find Dr. Robinson's opinions on these limitations.

And a reasonable person who found Dr. Robinson's opinions on these limitations persuasive may have reached different findings than the ALJ. For example, Dr. Robinson's assertion that Purvis can only rarely perform bending and/or stooping movements contradicts the ALJ's finding that Purvis can occasionally stoop and kneel. The ALJ's residual functional capacity assessment also includes no limitation on Purvis's ability to perform pushing and pulling movements, while Dr. Robinson says that Purvis can only rarely perform these movements.

Finally, the court cannot, as the Commissioner suggests, determine that the ALJ would have found Dr. Robinson's 2020 opinion unpersuasive because it was more restrictive than his 2022 opinion and suggests that Purvis showed some improvement since 2020. "To do so would call for conjecture that invades the province of the ALJ." *Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007).

—

In sum, the court will remand this case for the ALJ to articulate how persuasive she finds the 2020 opinion from Dr. Robinson. In remanding this case for reconsideration of Dr. Robinson's opinions, the court is not holding that the ALJ must find Dr. Robinson's opinions persuasive. Rather, the court is merely requiring the ALJ to explain how persuasive she finds each of the medical opinions in the record and how she considered the supportability and consistency factors in reaching her determinations.

## IV. CONCLUSION

For these reasons the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner. The court will enter a separate final order that closes this case.

**Done** on September 17, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE